IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LES A. NEWTON and BETTY NEWTON, h/w, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>NORFOLK SOUTHERN CORPORATION, )<br>t/a NORFOLK & WESTERN RAILWAY )<br>COMPANY; MCM VENTURES LIMITED, )<br>LTD; SEWICKLEY COUNTRY INN, )<br>)<br>Defendants. ) | Civil Action No. 05-01465<br>Judge Nora Barry Fischer |

## OPINION

This case involves claims related to a slip and fall suffered by Les A. Newton ("Mr. Newton") as well as a loss of consortium claim suffered by Betty Newton, Newton's wife, ("Mrs. Newton")(collectively, "Plaintiffs") against Norfolk Southern Railway Company ("Norfolk"), MCM Ventures Limited, LTD ("MCM") and the Sewickley Country Inn ("Sewickley Inn"). Pending before this Court is Defendants MCM and the Sewickley Inn's Motion of Summary Judgment [DE 27] and Defendant Norfolk's Motion for Summary Judgment [DE 30], which are both ripe for disposition.

## BACKGROUND

Defendant Norfolk employed Plaintiff Mr. Newton as a locomotive engineer from 1971 through the date of his accident, November 9, 2003. (Docket No. 28, Exh. F at 32:19-24) (hereinafter, "Newton Dep."). On November 9, 2003, Norfolk ordered Mr. Newton to travel from Cleveland, Ohio to the Conway Railroad Yards in Beaver County, Pennsylvania. (Newton Dep. at 39:2-8). Mr. Newton arrived at the Conway Railroad Yards at approximately 2:25 a.m.

1

and was thereafter transported by Norfolk to the Sewickley Inn. (*Id*. at 39:16-17). The Sewickley Inn is owned and operated by Defendant MCM, "a business entity with a principal place of business other than Ohio." (Docket No. 10 at ¶ 1).

At some time before 3:00 a.m. on November 9, 2003, Les Newton entered room 1106 of the Sewickley Inn and he prepared to take a shower. (Newton Dep. at 54:14-20). While showering, he lost his balance and fell on the back of the tub landing on his lower back and side. (*Id.* at 54:21-55:1). After a short period of time, Mr. Newton was able to get out of the tub and make a call to the front desk that he was in severe pain and in need of medical attention. (*Id.* at 55:2-24). He alleges that the cause of his fall was an unsafe slippery condition within the tub. (Docket No. 2 at ¶10, 27-29).

On November 3, 2005, the Plaintiffs filed an Amended Complaint[1] bringing their action against Defendant Norfolk under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51, *et seq*., the Federal Safety Appliances Act, 49 U.S.C. § 20301, *et seq*., and the Federal Locomotive Inspection Act, 49 U.S.C. § 20701, *et seq*. Additionally, the Amended Complaint alleges common law negligence as well as loss of consortium (as to Plaintiff Mrs. Newton) against Defendants MCM and the Sewickley Inn. The Plaintiffs allege that Mr. Newton's accident was caused by the unsafe condition of the Sewickley Inn, particularly that the shower and bath facilities were in a state of disrepair. (Docket No. 2, at ¶10, 27). On November 15, 2005, Norfolk filed its Answer to the Amended Complaint and a cross-claim against Defendants MCM and the Sewickley Inn for contribution and indemnification in the instance that Defendant

---

[1]    On October 20, 2005, Plaintiffs filed their initial Complaint.

Norfolk was found liable to the Plaintiffs. On June 1, 2006, upon motion by Defendants MCM and the Sewickley Inn, the Court stayed this case for six months due to medical procedures that Mr. Newton was undergoing.[2] On April 26, 2007, the Sewickley Inn and MCM filed a Motion for Summary Judgment and Brief in Support and on April 30, 2007, Norfolk filed a Motion for Summary Judgment and Brief in Support.[3] On May 3, 2007, the Plaintiffs responded to both motions. The following is what is taken to be undisputed by the parties from their briefs.

In responding to Interrogatory Number 17 of the Sewickley Inn regarding the alleged unsafe conditions of the shower and bath facilities, Plaintiffs answered in part that "the shower was unsafe because of the absence of protection devices and substances on the floor to increase friction and diminish slipping." (Docket No. 28, Exh. B at 2). It is admitted by the Plaintiffs that the bathroom tub was examined by Trainmaster J. A. Lavelle on the day of the alleged accident and the tub was found to have a rubber bath mat affixed. (Docket No. 27 at ¶5; Docket No. 28, Exh. D-2 ). Mr. Newton testified at his deposition that the bathtub in room 1106 had strips in the center of the tub that he understood were for traction and that about two inches of the ends of the strips towards the back of the bathtub appeared worn and frayed. (*Id*.). Mr.

---

[2] Judge Thomas M. Hardiman presided over this matter until his elevation to the Court of Appeals for the Third Circuit on April 5, 2007.

[3] The Court notes that neither the Sewickley Inn and MCM nor Norfolk filed a Concise Statement of Material Facts as required by the Local Rules, *see* W.D. PA. L.R. 56.1 (B)(1), as well as this Court's Practices and Procedures which went into effect after these filings, *see* Practices and Procedures of Judge Nora Barry Fischer Effective July 1, 2007, at (II)(E)(i), available at http://www.pawd.uscourts.gov/Documents/Public/Reference/j_fischer.pdf. While this Court could deny the pending motions without prejudice and allow the Defendants to re-file in compliance with the above Rule and the Court's current practices and procedures, in the interests of judicial economy and efficiency, the Court will nevertheless proceed to the merits.

Newton admits that he was unable to describe with any specificity what part of the strips, if any were slippery. (Docket No. 27 at ¶ 7; Newton Dep. at 50:7-13). At his deposition, he could not answer with certainty that his foot was on the bath mat when he fell, only that his foot was probably on it. (Newton Dep. at 61:4-13).

Keystone Engineering Consultants, Inc. performed coefficient of friction testing on the bath mat in the place where the accident is alleged to have occurred. The testing analysis determined that the bath mat exhibited a level of resistance exceeding applicable safety standards. Based upon the results of the testing, Keystone was able to opine that the bath mat was not a hazard to persons using reasonable care and that "the slip resistance of the subject bathtub applique was not the cause of Mr. Newton's falling accident." (Docket No. 27 at ¶15; Docket No. 28, Exh. E at 9). The Plaintiffs offer no expert report to contradict the report of the Defendants and only respond that they are unable to confirm the accuracy of the expert's opinion. (Docket No. 27 at ¶17; Docket No. 32 at ¶15-17). In the Plaintiff's Reply in Opposition, they state:

> [i]t is admitted that Plaintiff has no expert opinion to support his position in this lawsuit. Plaintiff did retain an engineering expert who inspected the tub in the presence of Mr. Newton, and while the expert agreed with the general knowledge that bath tubs become slippery when they are being used, he was unable to opine that there was any defective, unsafe or substandard condition with the tub or that the tub violated any government or industry standard.

(Docket No. 32 at ¶13).

Despite the lack of an expert report in support of their argument, the Plaintiffs point to Mr. Newton's testimony that it was his <u>belief</u> that the tub was in an unsafe slippery condition

4

and the wearing of the strips was the cause of his fall. (Newton Dep. at 60:21-24; Docket No. 32 at ¶17-22). The Plaintiffs admit, however, that Mr. Newton did not notice any slippery substance on the bottom of his feet or on the floor of the tub the night he fell nor could he testify as to where his feet were located at the time of his fall. (Docket No. 27 at ¶11); (Newton Dep. at 60:17-61:13, 63:17-20).

## **SUMMARY JUDGMENT STANDARD**

Summary judgment under Federal Rule of Civil Procedure 56(c) is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c) (2007).[4] In deciding a summary judgment motion, the court must "view the evidence . . . through the prism of the substantive evidentiary burden" to determine "whether a jury could reasonably find either that the plaintiff proved his case by the quality and quantity of the evidence required by the governing law or that he did not." *Anderson v. Consolidated Rail Corp.*, 297 F.3d 242, 247 (3d Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986)).

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing'—that is, pointing out to the District Court—that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant has carried this burden, the burden shifts to the non-moving

---

[4] On December 1, 2007, Fed.R.Civ.P. 56 amendments went into effect. At the time of the filing of the briefs, the 1987 version of Rule 56 was in effect. The changes to Rule 56 are stylistic only and do not effect the disposition of the motions before this Court. *See* Fed.R.Civ.P. 56 advisory comm. nn. 2007 amend. (West 2007).

party who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224, 1230 (3d Cir. 1993). Thus, the non-moving party cannot rest on the pleadings, but instead must go beyond the pleadings and present "specific facts showing a genuine issue for trial," Fed.R.Civ.P. 56(e)(2) (2007), and cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a motion for summary judgment. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (citing *Celotex*, 477 U.S. at 325 (1986)). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n.3 (3d Cir. 1998) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994)).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Industrial Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255 (1986)); s*ee also Doe v. County of Centre, PA*, 242 F.3d 437, 446 (3d Cir. 2001) (providing that "a court must take the facts in the light most favorable to the nonmoving party, the [plaintiffs], and draw all reasonable inferences in their favor") (citation omitted)).

**ANALYSIS**

Accidents happen and that they happen is unfortunate. Misfortune befalls individuals every day but that alone is not justification to shift some or all of any resulting loss to another. The Plaintiffs' case requires proof that the Defendants acted with negligence and that such negligence caused Mr. Newton's fall. The Plaintiffs have not presented sufficient evidence to meet this standard. Accordingly, there are no genuine material issues of fact which remain as to liability and all of the Defendants are entitled to judgment as a matter of law in their favor. The following is the Court's analysis of the Plaintiffs' claims under the Pennsylvania law of negligence and under the FELA.

**A.  PENNSYLVANIA LAW OF NEGLIGENCE**

This Court has jurisdiction over this matter through diversity of citizenship. *See* 28 U.S.C. § 1332 (2005). A federal court sitting in diversity must apply the substantive law of the state in which it sits, *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938), including its choice of law rules, *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). This case as presented by the parties does not appear to contain any dispute that Pennsylvania substantive law applies, and thus the Court declines to engage in a choice of law analysis. *Rochez Bros., Inc. v. North American Salt Co., Inc.*, Civ. A. No. 94-1131, 1994 WL 735932, at *6 n.8 (W.D. Pa. Nov. 2, 1994) (citing *Schiavone Construction Co. v. Time, Inc.*, 735 F.2d 94, 96 (3d Cir. 1984)) ("Because the parties appear to implicitly agree on the applicable choice of law, this Court will not challenge their decision").

Under the Pennsylvania law of negligence, in order for there to be liability, the plaintiff bears the burden of proving (1) a duty owed to the plaintiff by the defendants; (2) a breach of

that duty by the defendants; (3) a causal connection between the defendants' breach and the plaintiff's injury; and (4) injuries suffered by the plaintiff. *Estate of Zimmerman v. Southeastern Pennsylvania Transp. Authority*, 168 F.3d 680, 684 (3d Cir. 1999); *Reilly v. Tiergarten Inc.*, 633 A.2d 208, 210 (Pa. Super. 1993).

The third element of a negligence action, causation, consists of two parts, cause in fact and proximate cause.

> Cause in fact or "but for" causation requires proof that the harmful result would not have come about but for the conduct of the defendant. Proximate cause, in addition, requires proof that the defendant's conduct was a substantial contributing factor in bringing about the harm alleged. Where the relevant facts show either that the defendant was not responsible for the injury, or that the causal connection between the defendant's negligence and the plaintiff's injury is remote, the question of causation is decided by the court as a matter of law.

*Robertson v. Allied Signal, Inc*, 914 F.2d 360, 366-67 (3d Cir. 1990). "[T]he term 'cause in fact' embraces all things which have so far contributed to the result that without them it would not have occurred." W. Page Keeton Et Al., *Prosser and Keeton on the Law of Torts* §41, at 265 (5th ed. 1984). It is the plaintiff's burden to prove that the harm suffered was caused, both factually and legally, by the defendant and that burden must be sustained by a preponderance of the evidence. *Hamil v. Bashline*, 392 A.2d 1280, 1284 (Pa. 1978).

Proximate cause is a question of law that may be decided by the judge on summary judgment. *Reilly,* 633 A.2d at 210; *Cuthbert v. City of Philadelphia*, 209 A.2d 261, 264 (Pa. 1965). Cause in fact is a factual question for the jury, however, the issue of cause in fact may not be given to the jury if it would require guessing or speculation to determine cause. *Smith v. Bell Tel. Co. of Pa.*, 153 A.2d 477, 479 (Pa. 1959) "We have said many times that the jury may

not be permitted to reach its verdict merely on the basis of speculation or conjecture, but that there must be evidence upon which logically its conclusion may be based." *Smith*, 153 A.2d at 479 (citations omitted).

In *Cuthbert*, the plaintiff was hurrying to cross a street when she tripped and fell over what she "knew" to be a depression in the roadway made by a trolley rail. *Cuthbert*, 209 A.2d at 262-63. It was uncontested that the crosswalk did contain a negligently maintained trolley rail. The plaintiff could not, however, identify the exact portion of the crosswalk that she was on when she fell nor could she identify where her feet were located with respect to the rail at the time of her fall. *Id.* at 263.

> Mrs. Cuthbert may very well have fallen into the defect as she alleged, but she has failed to prove any facts upon which a jury would have been justified in so finding. It is equally possible that she tripped over a properly maintained section of the trolley rail for which, while unfortunate, no liability would have attached.

*Id.* at 264. Based upon the plaintiff's inability to provide any evidence of factual causation, the plaintiff could not prove causation as a matter of law.

Here, the Plaintiffs made the allegation that there was a defective and negligent condition in the bath and shower area and that the "frayed" bath mat strips caused Mr. Newton's fall. At his deposition, however, Mr. Newton could not testify with any specificity what part of the strips were slippery.

> Q. There was approximately two inches of the strip or strips on the bottom of the tub which were in the condition as you described, meaning worn and fraying and not attached, or were they attached?
> A. They were part of - - they were part of the tub itself.
> Q. Was that part of the surface of the strips that was slippery?
> A. I am not sure.

9

> Q. As you sit here today, do you recall any other sections of those strips on the bottom of the tub which were slippery, other than the two inches towards the center?
> A. I don't recall.

(Newton Dep. at 50:1-13). In addition, Mr. Newton could not testify as to where his feet were at the time of his fall.

> Q. Okay. When you stepped backwards with your right leg to get the shampoo, was your right leg on one of the strips, do you know?
> A. I don't know.
> Q. Okay. Do you know if the wearing of the strip had anything to do with how or why you twisted and fell?
> A. I believe it was a slippery condition. It was an unsafe slippery condition.
> Q. Was it a slippery condition for those strips, or the part of the tub that was not on the strip, did not have a strip on top of it?
> A. It did not have a strip on top of it.
> Q. Do you know when you fell whether your foot was on one of the strips or not?
> A. Partially, probably because they're spaced in such a way where it would be hard to get - - you know, I would say yes, I don't know how you could get between it.
> Q. I'm not asking you to speculate or to guess. I'm asking you for your recollection or what you know.
> Do you know if your foot was on one of those strips or not?
> A. No, I don't.

(Newton Dep. at 60:17-61:13).

Even if one assumes that the bath mat was in a negligently slippery and unsafe condition, there is no evidence that the Plaintiffs could present to a jury that Mr. Newton's fall was caused, in fact, by the bath mat and not, from what is the logical alternative, the soapy, wet, smooth surface of the bathtub. As the Plaintiffs admit in their Reply in Opposition, it is "general knowledge that bath tubs become slippery when they are being used." (Docket No. 32 at ¶13,

10

17). This is not to say that there are "equal inferences", rather there is no evidence presented, circumstantial or direct, that would prevent the jury from making a guess as to where Mr. Newton's feet were when he fell, just as there was no evidence as to whether Mrs. Cuthbert's feet were on or off the trolley rail defect.

Akin to the instant case, in *Fedorczyk v. Caribbean Cruise Lines, Ltd.,* 82 F.3d 69 (3d Cir. 1996), the plaintiff fell in the bathtub and alleged negligence based upon a lack of adequate abrasive strips within the tub. The plaintiff could not testify, however, as to where her feet were at the time of the accident. Instead, the plaintiff asserted that she could rely on circumstantial proof of causation. The Third Circuit rejected this assertion and refused to allow the plaintiff to rely on the mere happening of the accident as proof of causation. Applying New Jersey law, the Third Circuit held that "[n]o evidence presented tends to prove Fedorczyk was standing either on or off the stripping at the time she fell. Without such evidence, the jury is left to speculate whether Royal Cruise's negligence was the cause in fact of her injury." *Fedorczyk*, 82 F.3d at 75. Despite applying New Jersey law, the Court still finds *Fedorczyk* instructive as to the Plaintiffs' analysis of cause in fact based upon the striking similarity of the facts of the two cases. Moreover, "[t]he common law elements of negligence are the same in both Pennsylvania and New Jersey." *See Karahutha v. Boardwalk Regency Corp.* Civ. Act. No. 06-CV-04902, 2007 WL 2407096, at *4 (E.D.Pa. Aug. 8, 2007); *Compare Wartisila NSD North America, Inc. v. Hill Intern., Inc.,* 342 F.Supp.2d. 267, 278 (D.N.J. 2004) *with In re TMI,* 63 F.3d 1103, 1117 (3d Cir. 1995).

"[T]he mere occurrence of an injury does not prove negligence and that an admittedly negligent act does not necessarily entail liability . . . it is incumbent on a plaintiff to establish a

causal connection between defendant's conduct and the plaintiff's injury." *Hamil*, 392 A.2d at 1284. Mr. Newton's testimony is, at best, speculative and as a result, the Plaintiffs can not present sufficient evidence of causation to meet their burden. "[T]he evidence presented must be such that by reasoning from it, without resort to prejudice or guess, a jury can reach the conclusion sought by plaintiff, and not that that conclusion must be the *only* one which logically can be reached." *Smith*, 153 A.2d at 479-80 (emphasis in original). Thus, the Plaintiffs have failed to meet their burden in establishing the element of causation and the Sewickley Inn and MCM are entitled to judgment as a matter of law.

While not addressed by the parties, since Mrs. Newton's claim for loss of consortium as to Defendants the Sewickley Inn and MCM derives from Mr. Newton's claim for negligence, the former must fall with the latter. *See Beswick v. Maguire*, 748 A.2d 701, 705 (Pa. Super. 2000); *Little v. Jarvis*, 280 A.2d 617, 620 (Pa. Super. 1971). Accordingly, the Sewickley Inn and MCM's Motion for Summary Judgment [DE 27] shall be granted.

### B. FEDERAL EMPLOYERS' LIABILITY ACT

The Plaintiffs bring their claim against Norfolk under the FELA as well as the Federal Locomotive Inspection Act and the Federal Safety Appliances Act. (Docket No. 2 at ¶ 2). Neither the Federal Locomotive Inspection Act nor the Federal Safety Appliances Act provide for a private cause of action. *Moses v. Union Pacific R.R.*, 64 F.3d 413, 418 (8th Cir. 1995); *Frass v. Southern Pacific Transp. Co.*, 810 F.Supp 189, 190 (S.D. Miss. 1993). As a result, the Plaintiffs' claim against Norfolk may only proceed under the FELA.

The FELA was passed in 1908 as a means to provide railroad workers and their families the ability to receive compensation for injuries suffered on the job. *Hines v. Consolidated Rail*

*Corp.*, 926 F.2d 262, 267 (3d Cir. 1991). The FELA requires the plaintiff to prove four elements: (1) the defendant is a common carrier by railroad engaged in interstate commerce; (2) the plaintiff was employed by the defendant and assigned to perform duties which furthered such commerce; (3) the injuries were sustained while the plaintiff was employed by the common carrier; and (4) the injuries resulted from the defendant's negligence. *Felton v. Southeastern Pennsylvania Transp. Authority*, 952 F.2d 59, 63 (3d Cir. 1991). Here, Norfolk only argues that the Plaintiffs can not prove the element of whether Mr. Newton's injuries were the result of said defendant's negligence.

The standard for negligence under the FELA is purely one of federal common law. *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 543 (1994) (citing *Urie v. Thompson*, 337 U.S. 163, 174 (1949)). The FELA's standard for causation differs from the common law of negligence in that it has nearly eliminated questions of foreseeability and substantial factors and merely asks if there is "but for" causation present. The Supreme Court explained that "for practical purposes the inquiry in these [FELA] cases today rarely presents more than the single question whether negligence of the employer played *any part, however small*, in the injury or death which is the subject of the suit." *Rogers v. Missouri Pac. R. Co.*, 352 U.S. 500, 508 (1957) (emphasis added).

"[A] FELA plaintiff need only present a minimum amount of evidence in order to defeat a summary judgment motion. 'A trial court is justified in withdrawing . . . issues from the jury's consideration only in those extremely rare instances where there is zero probability either of employer negligence or that any such negligence contributed to the injury of an employee.'" *Hines*, 926 F.2s at 268 (quoting *Pehowic v. Erie Lackawanna R.R.*, 430 F.2d 697 (3d Cir. 1970)).

Although the FELA provides a relaxed standard for causation, it is not a workers compensation act and the plaintiff is still required to prove cause in fact. *Consolidated Rail Corp. v. Gotshall*, 512 U.S. at 543. Indeed, "[t]he Act does not make the employer the insurer of safety of his employees while they are on duty. The basis of this liability is his negligence, not the fact that injuries occur. And that negligence must be 'in whole or in part' the cause of the injury." *Ellis v. Union Pac. R. Co.*, 329 U.S. 649, 653 (1947).

Just as under the Pennsylvania law of negligence, a FELA plaintiff must present evidence upon which the jury may make a logical decision on causation in spite of the relaxed causation standard. Here, the Court finds that there is "zero probability" of but for causation under the FELA for the same reasons as set forth above under the Pennsylvania law of negligence. Plaintiffs' argument that but for the worn nature of the bath mat he would not have fallen is not sustainable because there is no evidence that can be presented, that at the time of the fall Mr. Newton was on the bath mat. The FELA's relaxed causation standard is not so relaxed as to allow the jury to speculate or guess when no evidence of cause in fact has been presented.

> It is no answer to say that the jury's verdict involved speculation and conjecture. Whenever facts are in dispute or the evidence is such that fair minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. Only when there is a *complete absence* of probative facts to support that conclusion reached does a reversible error appear.

*Lavender v. Kurn*, 327 U.S. 645, 653 (1946) (emphasis added). Mr. Newton's fall alone is not evidence that may connect the alleged negligence of Norfolk to his injury nor is it justification in itself for liability under the FELA. As stated, "the FELA is neither a workers compensation act

nor a strict liability act." *Fashauer v. New Jersey Transit Rail Operations, Inc.,* 57 F.3d 1269, 1283 (3d Cir. 1995). "The Federal Employer's Liability act was designed to put on the railroad industry some of the cost for the legs, eyes, arms and lives which it consumed in its operations. Not all these costs were imposed, for the Act did not make the employer an insurer. The liability which it imposed was the liability for negligence." *Wilkerson v. McCarthy*, 336 U.S. 53, 68 (1949) (Douglas, J. concurring).

As acknowledged by the Plaintiffs, tubs in their ordinary use are slippery. (Docket No. 32 at ¶13, 17). Without some evidence to connect the alleged negligently maintained bath mat with Mr. Newton's fall, in the face of the general knowledge that tubs are slippery, the Plaintiffs cannot meet their burden and Norfolk is entitled to judgment as a matter of law. Therefore, Norfolk's Motion for Summary Judgment [DE 30] shall be granted.[5]

## CONCLUSION

For the reasons stated above, the Sewickley Inn and MCM's Motion for Summary Judgment [DE 27] is GRANTED and Norfolk's Motion for Summary Judgment [DE 30] is GRANTED. An appropriate Order follows.

s/ *Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Dated:  January 3, 2008

cc/ ecf:  All counsel of record.

---

[5] As to Defendant Norfolk's cross-claim against Defendants the Sewickley Inn and MCM, because said claim hinged on a finding of liability as to Norfolk, *see* (Docket No. 7 at 5), the cross-claim is now moot.